# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY A. BRAZELTON, | ) 1:05cv0434 DLB |
| | ) |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| JO ANNE B. BARNHART, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **BACKGROUND**

Plaintiff Jeffrey A. Brazelton("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income and disability insurance benefits pursuant to Titles XVI and II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On March 6, 2006, the Honorable Anthony W. Ishii reassigned the case to the undersigned for all purposes.

1

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed an application for supplemental security income and disability insurance benefits on April 19, 2002, alleging disability since January 9, 1999, due to back pain. AR 60-62, 72. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 37-40, 43-47, 48-49. On January 21, 2004, ALJ Robert Evans held a hearing. AR 228-248. On May 20, 2004, ALJ Evans found that Plaintiff was not disabled. AR 17-27. On February 1, 2005, the Appeals Council denied review. AR 5-8.

<u>Hearing Testimony</u>

On January 21, 2004, ALJ Evans held a hearing in Lancaster, California. Plaintiff appeared with his attorney, Leah VanArsdale. Vocational expert ("VE") Alex Aloia also appeared and testified. AR 228.

Plaintiff testified that he was born on July 16, 1956, and completed the eleventh grade in special education. AR 232. He can read a newspaper, but with difficulty because he does not understand a lot of words. AR 233.

Plaintiff's doctor prescribed a cane for walking about a year ago, but he started using it about a year before that. AR 235, 239. He also uses a shower chair, which was prescribed after he fell twice in the shower. AR 239. He is 5 feet 10 inches tall and weighs 250 pounds. AR 237.

He testified that the pain in his lower back and the pain in the backs of his legs are the major problems that prevent him from working. AR 237. He has not had surgery because his doctor told him that he would have no mobility. AR 238.

He tried to go back to work but was unable to do so because the position required two hours of driving, after which he could not get out of his car. AR 240. One doctor diagnosed probable fibromyalgia because of his forgetfulness and depression. AR 242.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work history, who could lift and carry 10 pounds frequently, 20 occasionally, stand or walk six hours out of eight, and sit for six hours out of eight.  He could never climb ladders, ropes or scaffolds, but could occasionally climb stairs and ramps.  He could occasionally balance, crouch, crawl, stoop and kneel.  This person could perform work as a cleaner.  AR 244-245.

For the second hypothetical, the ALJ asked the VE to assume a person who could lift and carry 10 pounds frequently, 20 occasionally, stand or walk six hours out of eight, and sit for six hours out of eight.  This person could occasionally bend, stoop, climb, crouch, kneel, balance or pull.  He could not be exposed to unprotected heights, extremes of temperature or working in concentrations of fumes, smoke, other pollutants or toxics that would be harmful.  This person would not be able to perform the job of cleaner, but could perform the position of assembler of small parts.  AR 245-246.

For the third hypothetical, the ALJ asked the VE to assume an individual with the above limitations, and further reduced by a need to alternate sitting and standing at will.  This person could not perform any positions at the light level.  AR 246.

When questioned by Plaintiff's attorney, the VE indicated that if Plaintiff had to use a cane, he would be unable to perform the job of cleaner or small parts assembler.  AR 247.  In fact, if Plaintiff had to use a cane, there would be no positions under hypothetical one or two that he could perform.  AR 247.

Medical Record

Plaintiff sustained an occupational injury to his low back in October 1998.  AR 126.  On May 5, 2000, he was examined by Philip H. Conwisar, M.D., who had provided treatment since his injury.   He had tenderness throughout the lumbar region and restricted range of motion.  AR 129.  He diagnosed chronic lumbosacral spine sprain/strain, discogenic pain in the lumbar spine, degenerative disc disease of the lumbosacral spine, and multi-level disc bulging.  AR 133-134.  Dr. Conwisar considered Plaintiff to be permanent and stationary and precluded him from heavy work.  AR 134-135.

In February 2002, Plaintiff was evaluated by neurologist Mitchell H. Kaufman, M.D. Plaintiff complained of "grinding" low back pain that worsens with walking and/or bearing weight on his right leg. He also complained of tingling in the back of the right leg. Dr. Kaufman's impression was "presumed fibromyalgia" and "probable diabetic neuropathy." He explained that although Plaintiff complained primarily of lower back pain, the "constellation of additional complaints and identifiable areas of musculoskeletal point tenderness suggest a more systemic condition such as fibromyalgia." He prescribed medication and ordered testing. AR 142-145.

An MRI of the lumbar spine taken on February 20, 2002, revealed mild spondylosis at the upper lumbar spine, disc degeneration at L1-2 with a 4 mm broad posterior protrusion, 2mm bulge/ridges at L2-3 and L3-4, and mild right inferior foraminal encroachment at L2-3. AR 146. X-rays of the lumbosacral spine taken the same day revealed moderate degenerative changes with minima 2-3 mm retrolisthesis at the L3-4 level. AR 148.

Plaintiff returned to Dr. Kaufman on March 18, 2002. Dr. Kaufman reviewed the objective test results. He opined that Plaintiff has "at least a variant of fibromyalgia" based on the laboratory results and recommended a rheumatology consultation for verification and management. AR 140.

On May 9, 2002, Plaintiff saw rheumatologist Javeed Ahmed, M.D. His chief complaints were lower back pain and swelling. Upon examination, he had tenderness on right shoulder range of motion. AR 187-190. Plaintiff returned on May 23, 2002, for a follow-up. His joints had normal range of motion and no synovitis or effusion. Dr. Ahmed diagnosed osteoarthritis, chronic low back pain due to degenerative disc disease of the lumbar spine, and non-insulin dependent diabetes mellitus. Plaintiff refused an injection to the right shoulder. AR 186.

Plaintiff returned to Dr. Ahmed on June 24, 2002, and indicated that he was doing much better and that the medication was helping. His back pain and joint pain had improved. AR 185.

On August 14, 2002, Plaintiff saw Sheila Wright-Scott, M.D., for complaints of decreased visual acuity and tired eyes. Plaintiff was diagnosed with adult onset diabetes in

1  February 2001 and takes Glucophage.  On examination, there was no evidence of diabetic
2  retinopathy.  He was given a prescription for glasses.  AR 137.
3       Plaintiff saw consultive examiner Haniffa Cassim, M.D., on October 6, 2002.  He
4  complained of lower back pain and numbness in his right leg.  He used a "walking stick" that
5  was not prescribed by a doctor.  Upon examination, there were no paravertebral spasms in the
6  spine or tenderness, no crepitus or deformity, and no tender points.  Although Plaintiff had
7  limited range of motion in his lumbar region, Dr. Cassim indicated that this "may probably be
8  due to poor effort , rather than limitation of movement."  AR 163.  Dr. Cassim diagnosed low
9  back pain, and opined that Plaintiff could stand and walk for six hours with regular breaks.
10 Sitting was unrestricted and he did not need an assistive device.  He could lift and carry 20
11 pounds occasionally and 10 pounds frequently.  He could occasionally bending, stoop, crouch,
12 climb, kneel, balance, and pull.  He had to avoid working at extremes of temperature and at
13 heights, and should avoid exposure to fumes, dust and environmental pollutants.  AR 161-164.
14      On October 19, 2002, Plaintiff saw Robert Lindstrom, D.O., for a comprehensive
15 psychiatric examination.  Plaintiff indicated that the basis of his claim was back pain.  He
16 reported no psychiatric treatment and described his symptoms as forgetfulness and moodiness.
17 Upon mental status examination, Plaintiff's affect was euthymic, full and mildly anxious.
18 Plaintiff guessed the date to be November 17th, and Dr. Lindstrom opined that Plaintiff was
19 putting in poor effort because his gross inability to recall the date was inconsistent with the rest
20 of the exam.  Dr. Lindstrom did not find any psychiatric impairment.  Although Plaintiff gave
21 some soft signs of depressive disorder, they were not significantly troubling or impairing to
22 Plaintiff.  Most of his problems are based on his physical disability.  Plaintiff was not impaired in
23 his ability to perform simple and repetitive tasks or in his ability to interact well with supervisors,
24 coworkers, and the general public.  AR 165-169.
25      On November 13, 2002, State Agency physician Anne M. Khong, M.D., completed a
26 Physical Residual Functional Capacity Assessment form.  Dr. Khong opined that Plaintiff could
27 occasionally lift and/or carry 20 pounds, 10 pounds frequently, stand and/or walk about six hours
28 in an eight hour day, and sit about sit hours in an eight hour day.  AR 171-172.  He could never

climb ladders, ropes or scaffolds and could occasionally climb ramps and stairs. AR 173. He could frequently balance and occasionally stoop, kneel, crouch and crawl. AR 173. These findings were affirmed on February 5, 2003. AR 178.

On November 18, 2002, Dr. Khong completed a Psychiatric Review Technique Form and opined that Plaintiff's affective disorder was not severe. AR 170. This finding was affirmed on February 6, 2003. AR 170.

Plaintiff was also treated by Thelma T. Fernandez, M.D. On December 3, 2002, Plaintiff complained of severe back pain. AR 202. Dr. Fernandez prescribed a walking cane. She also indicated that Plaintiff was unable to work because of persistent back pain due to discogenic disease. AR 203.

Plaintiff saw Dr. Ahmed on December 18, 2002, and complained of some pain. He indicated that his medications helped to some extent and denied any numbness or weakness in his arms or legs. Dr. Ahmed advised Plaintiff to go to physical therapy for relief of the pain. AR 183.

On March 28, 2003, Dr. Fernandez prescribed a shower chair. AR 201.

ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of diabetes mellitus and degenerative disc disease of the lumbar spine. He found Plaintiff's allegations not totally credible, and determined that Plaintiff retained the residual functional capacity ("RFC") to perform a significant range of light work. AR 26.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (diabetes mellitus and degenerative disc disease of the lumbar spine) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P,

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

7

1  Regulations No. 4; (4) cannot perform his past relevant work; and (5) retains the RFC to perform
2  a significant range of light work. AR 26.
3      Here, Plaintiff argues that the ALJ (1) erred in failing to give appropriate weight to the
4  treating physicians; (2) erred in determining Plaintiff's RFC; (3) posed an incomplete
5  hypothetical to the VE; and (4) failed to properly evaluate Plaintiff's subjective complaints and
6  complaints of pain.

## DISCUSSION

A.     Treating Physicians' Opinions

Plaintiff argues that the ALJ improperly rejected Dr. Fernandez's opinion that Plaintiff was unable to work because of persistent back pain due to discogenic disease.

It is true that the medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985). Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual. However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751, and *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. 416.927(e).

Here, the ALJ reviewed Dr. Fernandez's treatment notes. He described them as "cursory," with no reference to objective abnormalities relative to the back pain and no findings of neurological deficits. AR 23. He noted that Dr. Fernandez prescribed a walking cane and opined that Plaintiff could not work due to persistent back pain. AR 23.

The ALJ rejected Dr. Fernandez's opinion that Plaintiff was unable to work because it was not supported by her progress notes, which showed no objective abnormalities. AR 23. Plaintiff concedes that her progress notes do not show objective abnormalities, but argues that

there are other objective findings in the record to support her opinion. He points to an MRI and x-rays taken in February 2002, and explains that these records were sent to Dr. Fernandez. Even assuming that the MRI and x-ray revealed findings so severe as to preclude work, it does not change the fact that Dr. Fernandez's opinion was not supported by *any* of her own findings. Certainly, this detracts from the plausibility of her opinion and the ALJ could properly rely on this deficiency. Similarly, Plaintiff points to Dr. Kaufman's neurological examination, which was sent to Dr. Fernandez. Again, even assuming that his findings were severe enough to warrant Dr. Fernandez's opinion, it does not alter the lack of objective findings in Dr. Fernandez's notes. A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ also rejected Dr. Fernandez's opinion because it was "grossly inconsistent" with Dr. Ahmed's progress notes. The ALJ explained that Dr. Ahmed, a specialist in rheumatology and internal medicine, found no synovitis or effusion in any joints, a normal range of motion and no neurological deficits. AR 23. Plaintiff contends that "this seems to come from x-rays performed on the hip and elbow." He also references Dr. Ahmed's diagnoses of osteoarthritis, chronic low back pain due to degenerative disc disease of the lumbar spine, and diabetes mellitus. Contrary to Plaintiff's suggestion, Dr. Ahmed's findings were not limited to his hip and elbow. He stated that "[a]ll joints have no synovitis or effusion with normal range of motion." AR 183. Moreover, it is not disputed that Plaintiff suffered from osteoarthritis, chronic low back pain, and diabetes mellitus. However, the mere presence of these impairments does not translate into the inability to work. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability). In any event, the ALJ properly relied on Dr. Ahmed's progress notes to discredit Dr. Fernandez's extreme opinion of disability. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physician's opinion where contradicted by other assessment of claimant's medical opinion).

Finally, the ALJ explained that Dr. Fernandez's opinion was inconsistent with Dr. Cassim's evaluation, which was essentially normal except for decreased range of motion of the lumbar spine probably due to poor effort. AR 23, 163. Plaintiff argues that Dr. Cassim's

findings are not supported by the medical evidence. For example, Plaintiff contends that Dr. Cassim's statement that Plaintiff did not need to use a cane because one wasn't prescribed, should be discredited because not long after the examination, Dr. Fernandez prescribed a cane. However, Dr. Cassim's finding that Plaintiff did not require an assistive device was based on her examination and observation, not on the fact that he used a non-prescribed cane. AR 164. Indeed, her examination revealed a normal gait, no paravertebral spasms in the spine and no tenderness. AR 163-164. There was no crepitus, no deformity and no tender points. AR 164. In recognition of Plaintiff's complaints of pain, Dr. Cassim diagnosed low back pain. Again, however, this diagnosis does not support Dr. Fernandez's opinion that Plaintiff was unable to work, and the ALJ was entitled to rely on Dr. Cassim's report. *Batson*, 359 F.3d at 1195. Plaintiff also faults Dr. Cassim for not explaining her opinion that Plaintiff exhibited poor effort. Her comment was based on her observations during the examination, and a more detailed explanation is not necessary. The ALJ was entitled to rely on these observations during the examination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultive examiner's opinion is substantial evidence).

Insofar as Plaintiff contends that the ALJ should have recontacted Dr. Fernandez "to find out what she meant when she said the plaintiff is unable to work or what objective evidence the doctor used to support her findings," his argument fails. The evidence was neither ambiguous nor inadequate so as to trigger the ALJ's duty to develop the record. *Tonapetyan,* 242 F.3d at 1150 (holding that ALJs have a duty fully and fairly to develop the record only when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence).

B.  <u>RFC Determination</u>

Next, Plaintiff contends that the ALJ erred in his RFC finding because he did not include the requirement that Plaintiff use a cane.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment must be based on all of

10

the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. SSR 96-8p. In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. SSR 96-8p.

Here, the ALJ found that Plaintiff retained the RFC to perform light exertion with occasional bending, stooping, crouching, climbing, kneeling, balancing and pulling. Plaintiff had to avoid working in temperature extremes and at heights. He also had to avoid exposure to fumes, dust and environmental pollutants. AR 23.

The ALJ did not include Plaintiff's alleged need for a cane based on Dr. Cassim's assessment, which he described as consistent with the findings from the evaluations and objective studies. AR 23. As explained above, Dr. Cassim's findings constituted substantial evidence upon which the ALJ was entitled to rely. *Tonapetyan*, 242 F.3d at 1149.

The ALJ discussed Dr. Fernandez's prescription for a cane and explained that the prescription was for a "walking cane," which shows only the need for a cane while walking, not standing. AR 25, 203. Plaintiff contends that a "walking cane" can be used to help a person walk or maintain balance, or to help take pressure off a leg, and that Dr. Fernandez did not specify what the cane was to be used for. Dr. Fernandez prescribed a shower chair a few months later, and Plaintiff argues that this demonstrates that he either needed to take pressure off his legs or has trouble balancing.

Dr. Fernandez's description of the cane as a "walking cane" was sufficient to allow the ALJ to conclude that Plaintiff only needed the cane while walking, not standing. AR 25. Plaintiff testified that he had started to use a cane about a year before it was prescribed because "it helped alleviate a little bit of the pain in my lower back." AR 239. He testified that the shower chair was prescribed because he had fallen twice in the shower. He has never fallen outside of the shower. AR 239. Moreover, the medical examinations from the time Plaintiff allegedly used the case revealed no significant findings. Dr. Cassim examined Plaintiff while he used the cane and

opined that Plaintiff could stand and walk for six hours with regular breaks, and could sit unrestricted. AR 164. She further opined that Plaintiff did not need an assistive device. AT 164. Similarly, the State Agency physician who reviewed Plaintiff's medical records opined that Plaintiff could stand and/or walk about six hours in an eight hour day, and sit about six hours in an eight hour day. AR 171-172. He could never climb ladders, ropes or scaffolds and could occasionally climb ramps and stairs. AR 173. He could frequently balance and occasionally stoop, kneel, crouch and crawl. AR 173. These findings were affirmed on February 5, 2003, *after* Plaintiff received the prescription for the cane. AR 178. The findings of a nonexamining physician can constitute substantial evidence where the ALJ relies on additional evidence in rejecting the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir.1989).

Plaintiff repeatedly points to an October 18, 2004, progress report from Robert Lawrence, M.D., as confirming Plaintiff's need for a cane. However, these records were submitted to the Appeals Council and were not before the ALJ. As this Court reviews the ALJ's decision, and not that of the Appeals Council, it will only review evidence available to the ALJ. Nor is the evidence "material" so as to warrant remand because the evidence is not probative of Plaintiff's condition as it existed during the relevant time period -- on or before the administrative hearing. *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 511 (9th Cir. 1987).

C.     Hypothetical Question

Plaintiff argues that the ALJ posed an incomplete hypothetical to the VE because the hypothetical upon which the ALJ based his RFC did not include the required use of a cane, the need to alternate between sitting and standing, and Plaintiff's alleged limitations in concentration and memory.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are

not supported by the record. *Embrey*, 849 F.2d at 422. Therefore, the ALJ may properly limit a hypothetical to those impairments supported by substantial evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-1165 (9th Cir. 2001).

The ALJ was not required to include a need to use a cane in his hypothetical because, as the Court has explained, he properly accepted Dr. Cassim's opinion to the contrary. Similarly, there is no evidence to support Plaintiff's contention that the ALJ should have included an option to alternate sitting and standing at will. Although Plaintiff points to his complaints to his physicians and his shower chair as evidence, neither of these support this limitation. In fact, Dr. Cassim opined that Plaintiff could walk for six hours with regular breaks and could sit unrestricted. AR 164. Nor did the reviewing State Agency physician find the need for alternating sitting and standing at will. AR 171-172, 178.

Finally, Plaintiff is incorrect in arguing that Dr. Lindstrom's opinion supports limitations in concentration and memory. During mental status examination, Dr. Lindstrom found that Plaintiff's concentration allowed him to perform a three-step command without any difficulty. As for memory, Plaintiff demonstrated impairments in his immediate recall, but Dr. Lindstrom believed that Plaintiff was not putting forth as strong an effort as might be expected. AR 168. His recent and past recall was intact. AR 168. Dr. Lindstrom concluded that Plaintiff had no psychiatric diagnosis and no resulting limitations. AR 169.

D.  Credibility Finding

Finally, Plaintiff contends that the ALJ failed to properly evaluate his subjective complaints and complaints of pain.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In rejecting Plaintiff's subjective complaints, the ALJ first explained that his allegations were out of proportion to the objective findings. AR 24. Specifically, he noted that there was no evidence of neuropathy, radiculpoathy or any abnormalities of the lower extremities. The lumbar MRI did not show any nerve root or cord involvement. There was no evidence of diabetic end organ involvement or change. There was no evidence of severe disuse muscle atrophy. AR 24. The ALJ was entitled to rely on the medical evidence to discredit Plaintiff's subjective complaints. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). Plaintiff points to evidence in the record that he contends contradicts the ALJ's findings. However, where the evidence can support more than one conclusion, the Court cannot substitute its judgment for that of the Commissioner. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

The ALJ next explained that Plaintiff's allegations are inconsistent with the treatment he receives. AR 24. Plaintiff has routine office visits for his physical complaints and has had no hospitalizations or emergency room care. He has not received physical therapy or other modalities of treatment besides medication management. AR 24. In fact, although Dr. Ahmed recommended physical therapy, there is no evidence that Plaintiff received such treatment. AR 183. He has not received mental health treatment and admitted as much to Dr. Lindstrom. AR 165. Although Plaintiff contends that the medication Trazadone is an antidepressant, it appears that this medication was used to treat his pain. AR 183, 185, 186. The ALJ reasonably concluded that if Plaintiff experienced the disabling problems alleged, he would have received

more aggressive treatment. The ALJ properly relied on this minimal and conservative treatment. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The ALJ then discussed Plaintiff's activities of daily living, and concluded that they are out of proportion to the level of incapacity he alleged. AR 24. Plaintiff reported to Dr. Lindstrom that he takes his wife, son and sister to work, attempts to do some light housework, plays video games, tries to work at his computer and attends meetings with his son on a monthly basis. AR 167. Plaintiff also testified that he was able to drive to the San Fernando Valley, about an hour and a half away, without stopping. AR 241. The ALJ is entitled to review Plaintiff's daily activities in assessing his credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Plaintiff disputes the ALJ's interpretation, and argues that the cited activities do not necessarily equate to a capacity to engage in substantial gainful activity on a sustained basis. However, the ALJ may use "ordinary techniques" in addressing credibility, *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996). The inferences the ALJ made here are not unreasonable. In any event, the ALJ supported his credibility analysis with sufficient reasons, aside from Plaintiff's daily activities, to allow the Court to conclude that he did not arbitrarily reject Plaintiff's testimony. *Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

Finally, the ALJ questioned Plaintiff's credibility based on Dr. Cassim and Dr. Lindstrom's notations of poor effort during their evaluations. AR 24, 163, 168. This was proper. *Thomas*, 278 F.3d at 959 (claimant's failure to give maximum or consistent effort during two physical capacity evaluations was an "[e]ven more compelling" reason to affirm the ALJ's credibility finding).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

1  Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in
2  favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff,
3  Jeffrey A. Brazelton.

     IT IS SO ORDERED.

    **Dated:**   **March 10, 2006**            **/s/ Dennis L. Beck**
3b142a                                           UNITED STATES MAGISTRATE JUDGE